Claude S. WOODY, Jr., Appellant,

v.

The STATE of Oklahoma ex rel. William S. ALLEN, Special District Judge in and for Oklahoma County, Appellee.

No. M–77–268.

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1977.

Don E. Hamilton, Hamilton & Lambert, Oklahoma City, for appellant.

Andrew M. Coats, Dist. Atty., James P. Laurence, Asst. Dist. Atty., Bert A. Richard, Jr., Legal Intern, Oklahoma City, for appellee.

## OPINION

PER CURIAM:

Appellant, Claude S. Woody, Jr., hereinafter referred to as defendant, was on October 29, 1976, in the District Court, Oklahoma County, the Honorable William M. Allen presiding, adjudged guilty of direct contempt of court, pursuant to 21 O.S.1971, § 565. On November 1, 1976, a hearing was held. Subsequently the court issued an order finding defendant in direct contempt of court, and fining him $100.00. From this order, defendant perfected an appeal to the Supreme Court of Oklahoma. The cause was thereafter transferred to this Court on April 18, 1977.

The facts are these. The defendant appealed to the District Court, Oklahoma County, from a conviction in the Municipal Court of Nichols Hills, wherein defendant was found guilty of disorderly conduct. The District Court affirmed that conviction after trial on October 29th. As the defendant was leaving the courtroom, Judge William M. Allen observed the defendant "confront" two Nichols Hills police officers who had testified at defendant's trial for disorderly conduct, and who were still seated at counsel table. Although Judge Allen did not hear what was said, he noted "alarm" or "surprise" on the faces of the officers. Thereupon the court administered an oath to the officers, and questioned them as to what the defendant said. Upon hearing their testimony, the court found the defendant in contempt of court. This all occurred on Friday afternoon, and a hearing was ordered for the following Monday. At the hearing the defendant elected not to testify or offer any evidence, but instead his attorney presented argument and citations of authority to the court.

■ Defendant's first assignment of error is that the trial court did not make an order specifically setting forth facts and grounds upon which a contempt conviction could rest. Title 21 O.S.1971, § 568 states:

"Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court."

The case of *Busby v. State ex rel. LaFon,* Okl.Cr., 449 P.2d 718 (1969) held that § 568 was applicable not only where the court imposed confinement, but also where the court imposes a fine.

Judge Allen's order stated in pertinent part:

" . . . This court finds that on the said 29th day of October, 1976, after receiving sworn testimony, the defendant did make an obscene gesture directed at two Nichol Hills police officers, witnesses against the defendant in a previous cause, and did utter threatening words at the said witnesses, said words and gestures made in the presence of this Court. . . ."

We are of the opinion that this statement sufficiently set forth the facts upon which the contempt was based. It was not necessary to recite the actual threatening language which was used, nor necessary to describe the "obscene gesture."

Defendant's second assignment of error is that the acts complained of did not constitute contempt as contemplated by Article II, § 25 of the Oklahoma Constitution, and 21 O.S.1971, § 565.

■ In Oklahoma the statutory and constitutional provisions provide the power of the court to punish for contempt, and supercedes the common law. *Smith v. State ex rel. Raburn,* Okl.Cr., 536 P.2d 976 (1975). Further, in that case it is stated:

"The purpose of the power to punish for direct contempt is to protect the due administration of justice from obstruction. Thus this Court has held that direct criminal contempt consists of ' . . . conduct that is directed against the dignity

and authority of the Court or Judge acting judicially, obstructive of the administration of justice and disrespectful of the Majesty of the state' *Roselle v. State,* Okl.Cr., 503 P.2d 1293 (1972); see also, *Ex parte Stephenson,* 89 Okl.Cr. 427, 209 P.2d 515 (1949)."

Article II, § 25 of the Oklahoma Constitution provides that the Legislature shall define contempt. Title 21 O.S.1971, § 565 states, in pertinent part:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. . . . "

■ Defendant urges several propositions. He first asserts that the acts complained of did not occur during a session of the court, inasmuch as the defendant's case had just ended, and another had yet to be called. Black's Law Dictionary defines "session" as follows:

"The sitting of a court, Legislature, council, commission, etc., for the transaction of its proper business. Hence, the period of time, within any one day, during which such body is assembled in form, and engaged in the transaction of business, or, in a more extended sense, the whole space of time from its first assembling to its prorogation or adjournment *sine die.* . . . "

In *Ralls v. Wyand,* 40 Okl. 323, 138 P. 158 (1914), the Oklahoma Supreme Court cited with approval the following quote from the Encyclopedia of Pleading and Practice Vol. 21, page 559, 560:

" . . . A session of court is the time during a term in which court sits for the transaction of business. . . . "

It is our opinion and we therefore hold that in the instant case the court was "in session" within the meaning of § 565.

■ Defendant also contends that the acts complained of did not occur in the immediate view and presence of the court. This is so defendant reasons because the Judge did not actually hear or see the offensive communications and had to rely on the testimony of the officers. However, § 565 does not require that the Judge hear the offense, only that it be in the view and presence of the court. Herein, the acts complained of occurred ten feet from the bench, and in front of the bar.

In *Moss v. Arnold,* 63 Okl.Cr. 343, 75 P.2d 491 (1938), the Judge did not see or hear the contemptuous conduct, which consisted of wrongfully attempting to communicate with a juror, but rather he was informed of it by others. In determining whether the contempt was committed in the presence of the court, this Court quoted the following passage from 6 Ruling Case Law, 492:

"Since the law relating to direct contempts is generally distinguishable from that relating to indirect contempts, many of the cases define what is meant by 'the presence of the court.' It is said that the court consists not of the judge, the court room, the jury, or the jury room, but of all of these combined; and wherever any constituent part is engaged in the prosecution of the business of the court according to law, there the court is present. Any disorderly, contemptuous, or insolent behavior committed in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law must be a contempt committed in the immediate view and presence of the court."

Similarly, in an early case, *Ex Parte Savin,* 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889), the United States Supreme Court had occasion to deal with the term "presence" in a Federal Contempt Statute. The Court stated:

" . . . We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. . . ."

The foregoing considered, we are of the opinion that the acts complained of occurred within the view and presence of the court within the meaning of § 565. Further, threatening words and gestures by the defendant to the police witnesses constituted "insolent behavior" within the meaning of that same statute. See, *Champion v. State,* Okl.Cr., 456 P.2d 571 (1969).

Defendant also asserts that the complained of acts did not cause a breach of the peace, a noise or a disturbance, nor did the acts complained of interrupt the proceedings of the court, nor embarrass, impede or obstruct the court in the administration of justice. However, defendant misconstrues § 565. That Section states that direct contempt consists of several alternatives, which are: (1) disorderly or insolent behavior committed during the session of the court and in its immediate view and presence; (2) refusal to be sworn as a witness; (3) refusal to answer any legal or proper questions; or (4) any breach of the peace, noise or disturbance so near to the court as to interrupt its proceedings. These are alternatives, and it is only necessary that the acts complained of satisfy the requisites of one alternative. We are of the opinion that it is not necessary that the record reflect that there was a breach of the peace. We therefore hold that defendant's second assignment of error is without merit.

■ Defendant's third and final assignment of error is that the standards of criminal justice relating to the functions of the trial judge with respect to the use of the power of contempt were not followed. The Oklahoma Supreme Court, in *State ex rel. Young v. Woodson,* Okl., 522 P.2d 1035 (1974), adopted certain standards of the American Bar Association Project on Standards of Criminal Justice relating to the power of contempt. In *Smith v. State ex rel. Raburn, supra,* this Court cited with approval *State ex rel. Young v. Woodson,*

*supra,* thereby adopting the same standards. Standard No. 2 states:

"2. ADMONITION AND WARNING. No sanction other than censure should be imposed by the trial judge unless (i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or (ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition."

We are of the opinion that the trial court was within its power in imposing a sanction without a prior warning inasmuch as it was clear from the identity of the offender and the character of the acts that the disruptive conduct was willfully contemptuous. It is not necessary that the contemptuous behavior be directed at the court itself. See, *Robinson v. State,* Okl.Cr., 503 P.2d 582 (1972). Defendant's final contention is therefore without merit.

For the foregoing reasons, the order adjudging defendant in contempt of court is *AFFIRMED.*